UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

WALTER WHITE,

               Plaintiff,             Case No. 2:13-cv-77

v.                                                    Honorable R. Allan Edgar

B. SWEENEY, et al.,

               Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants . The Court will serve the complaint against Defendants Meyers, Linder, Beruzethie, Sweeney, Sackett, and Dillian.

**Discussion**

I.  Factual allegations

Plaintiff Walter White, a prisoner currently confined at the Marquette Branch Prison, filed this civil rights action pursuant to 42 U.S.C. § 1983 against numerous prison officials, including Assistant Resident Unit Manager B. Sweeney, Corrections Officers T. Meyers and T. Linder, Assistant Resident Unit Manager Robert Warr, Corrections Officer Unknown Beruzethie, Grievance Coordinator T. LaPlant, Psychiatrists Ann Lanala and Unknown Warlock, R.N. Nancy Flinigan, Health Services Unit Manager Gloria Hill, Hearing Investigator Steven Raymond, Prison Health Care Services, Inc., five (5) Unknown Cell Extraction Team Members, Corrections Officer S. Petro, Corrections Officer Ralph Sackett, Director Daniel Heyns, Warden Michael Curley, Assistant Resident Unit Manager S. Burk, Assistant Deputy Warden Jeffery Lawson, Inspector Eric A. Patega, Deputy Warden William Jondreau, Sergeant Unknown Rolland, Sergeant Unknown Hockings, Sergeant Unknown Koskinen, Unknown Party Physician Assistant, two (2) Unknown Parties Medical Doctors, Captain Jane Chapel, Medical Doctor Unknown Mara, three (3) R.N. Unknown Parties, Assistant Grievance Coordinator J. Ansel, Corrections Officer T. Maki, R.N. Unknown Mills, Corrections Officer Unknown Stanolis, Sergeant Unknown Dillian, two (2) Unknown Party Supervisors for Prison Health Services, and Sergeant Unknown Rossland.

Initially, the court notes that Plaintiff's complaint consists of forty-one pages of barely legible, largely incomprehensible allegations. In addition, the majority of Plaintiff's claims consist of conclusory assertions of misconduct with little in the way of supporting factual allegations. Plaintiff alleges that on May 4, 2011, while he was incarcerated at the Baraga Maximum Correctional Facility (AMF), Defendant Meyers delivered a food tray that had unknown objects in

the food.  Plaintiff asked Defendant Meyers for another food tray, to no avail.  Plaintiff then told Defendant Sweeney that Defendant Meyers had refused to bring him a clean tray and had made inappropriate sexual comments to "a prisoner."  Defendant Sweeney did not take any corrective action.  Plaintiff claims that he asked Defendant Beruzethie for a replacement food tray, but that Defendant Beruzethie told Plaintiff that it was up to Defendants Meyers and Linder.  On May 5, 2011, Defendant Linder refused to give Plaintiff a dinner tray.

Plaintiff alleges that between May 4, 2011, and May 8, 2011, Defendants Linder, Meyers, and Beruzethie intentionally deprived Plaintiff of his meals on first and second shift. Plaintiff filed grievances and kites regarding this denial, which were reviewed by Defendants Sackett, Sweeney, Meyers, Linder and Beruzethie.  On May 11, 2011, Plaintiff decided to go on a "religious fast" in an effort to turn the denial of food into a positive situation.  On May 14, 2011, Defendant Sackett failed to take action to make sure that Plaintiff received his meals.  Plaintiff asserts that Defendant Sackett's failure to act was motivated by a desire to retaliate against Plaintiff for filing grievances and sending complaints to Defendants Lawson, Curley, and Jondreau. Similarly, Defendant Patega failed to adequately investigate the alleged misconduct.  Plaintiff states that he experienced weight loss, weakness, dehydration, and physical and emotional distress. Plaintiff attempted to seek medical help from three (3) Unknown R.N. Defendants, to no avail.

On May 14, 2011, Defendant Lanala failed to provide Plaintiff with mental health treatment despite witnessing his distress.  Plaintiff states that Defendant Mills witnessed Plaintiff in physical pain due to insufficient diet (Plaintiff asserts that he was being fed less than 2800 calories per day and failed to provide him with health care services.  On May 15, 2011, Defendant Burk placed Plaintiff on food loaf in retaliation for Plaintiff filing grievances on himself and other staff.

On June 6, 2011, Defendant LaPlant obstructed Plaintiff's use of the grievance system by removing pages 2 and 3 of his step II grievance appeal in two of Plaintiff's grievances. Plaintiff claims that Defendant LaPlant engaged in this conduct in retaliation for filing grievances. On June 21, 2011, Defendant Ansel approved the conduct of Defendant LaPlant in removing pages 2 and 3 of his step II grievance appeal. On June 22, 2011, Plaintiff notified Defendant Curley of the misconduct of the interference with his grievances and with the deprivation of his meal trays. On September 11, 2011, Defendant Flinigan made daily rounds in segregation, but failed to provide Plaintiff with needed health care. In addition, Defendant Hill failed to properly train and supervise Defendant Flinigan.

On February 3, 2012, Defendant Maki wrote a class II misconduct on Plaintiff for disobeying a direct order after Plaintiff requested law books from Defendants Maki and Hockings. On February 9, 2012, Defendants Koskinen and Raymond denied Plaintiff a fair and impartial hearing and sanctioned Plaintiff with 15 days loss of privileges. On February 17, 2012, Defendant Petro served Plaintiff a food tray that contained a hot dog that had been "burnt to a crisp." Plaintiff asked for another tray, but Defendant Petro refused his request. Defendant Petro then falsified a class II misconduct ticket on Plaintiff in retaliation for requesting a new food tray and asking to see the Sergeant.

On February 22, 2012, Defendant Warlock denied Plaintiff's repeated requests for mental health treatment after Plaintiff was verbally and physically abused by staff. In addition, Defendant Dillian falsified a class II misconduct for disobeying a direct order and Defendant Rossland condoned Defendant Dillian's conduct. Plaintiff claims that Defendants Koskinen, Stanolis and Burk conspired with Dillian to fabricate the misconduct. Plaintiff further states that

Defendant Dillian discriminated against him on the basis of race and that Defendant Dillian, along with the cell extraction team, was responsible for the use of chemical agents and excessive force to remove Plaintiff from his cell. Plaintiff claims that he suffered irreparable physical injuries and emotional distress as a result. On February 23, 2012, shift supervisor Defendants Chapel and Koskinen failed to adequately supervise and train Defendants Dillian, Rossland, and Stanolis. Similarly, Defendant Patega failed to adequately investigate the alleged misconduct.

On July 1, 2012, Defendants Sweeney and Burk acted jointly to deny Plaintiff access to the courts in Case No. 2:12-cv-280 by failing to send out the pleadings along with the filing fee. Plaintiff states that on July 9, 2012, the court returned his $350.00 filing fee. A review of the docket sheet for Case No. 2:12-cv-280 shows that the filing fee was returned on July 9, 2012, because no case had been filed. On July 10, 2012, the court received the complaint and a case was opened. On August 1, 2012, the filing fee was received by the court. Therefore, it does not appear as if Plaintiff was prejudiced by the alleged misconduct of Defendants Sweeney and Burk. Plaintiff claims that during the pertinent time period, Defendants Heyns, Lawson, and Unknown Prison Health Services Supervisor failed to adequately train and supervise their subordinates.

Plaintiff claims that Defendants violated his rights under the First, Eighth and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially the court notes that Plaintiff's claims that Defendants Meyers, Linder, Beruzethie, Sweeney, and Sackett deprived him of his meal trays between May 4, 2011, and May 8, 2011, in retaliation for his use of the grievance system, causing Plaintiff to suffer weight loss, weakness, and dehydration appear to state a claim under the First and Eighth Amendments. In addition, Plaintiff's claim against Defendant Dillian regarding excessive force and the use of chemical agents is non-frivolous. Therefore, these claims may not be dismissed on initial screening.

Plaintiff claims that Defendant Burk placed Plaintiff on food loaf in retaliation for Plaintiff's use of the grievance system. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The court concludes that such a restriction is insufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct. *Branham v. Bergh*, 2009 WL 728460, *6 (W.D. Mich. 2009). Moreover, Plaintiff merely alleges the ultimate fact of retaliation in this action and fails to allege any specific facts to support his conclusion that he was placed on food loaf because he filed grievances. *Id.* Therefore, this claim is properly dismissed.

Moreover, this conduct does not violate the Eighth Amendment, which imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id.* at 348. With regard to food, prisoners must receive adequate nutrition to maintain normal health; the food need not be tasty or aesthetically pleasing. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). The Sixth Circuit has repeatedly held that a diet of food loaf does not violate the Eighth Amendment because nutritional and caloric requirements are met. *See, e.g.*, *Payton-Bey v. Vidor*, No. 94-2472, 1995 WL 603241, at *1 (6th Cir. Oct. 12, 1995); *Hinton v. Doney*, No. 93-2050, 1994 WL 20225, at *2 (6th Cir. Jan. 26, 1994); *Boswell v. Meyers*, No. 89-2144, 1990 WL 109230, at *1 (6th Cir. Aug. 2, 1990).

Plaintiff also alleges that Defendants Lanala, Mills, Warlock, and Flinigan, as well as three Unknown R.N. Defendants, an Unknown Physician's Assistant, and two Unknown Medical Doctors, violated his Eighth Amendment rights when they denied him services for his mental and physical health. A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor

maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). As noted above, Plaintiff's Eighth Amendment claims against Defendants Lanala, Mills, Warlock and Flinigan, as well as three Unknown R.N. Defendants, an Unknown Physician's

Assistant, and two Unknown Medical Doctors, are conclusory and unsupported by any specific factual allegations. Therefore, they are properly dismissed.

Plaintiff claims that Defendant LaPlant obstructed his use of the grievance system by removing pages 2 and 3 of his step II grievance appeal in two of Plaintiff's grievances. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). In addition, the removal of parts of his grievance is not the type of conduct that would deter a person of ordinary firmness from filing grievances. Therefore, Plaintiff's claims regarding the interference with his grievance filings are properly dismissed.

Plaintiff claims that Defendants Maki, Petro, and Dillian falsified class II misconduct tickets on him, and that this behavior was condoned by Defendants Koskinen, Raymond, Stanolis, Burk, Chapel, and Rossland. Plaintiff claims that Defendants Koskinen and Raymond denied him a fair and impartial hearing and that Defendant Patega failed to adequately investigate the misconduct. A prisoner found guilty of class II misconducts is subject to the following sanctions:

<u>Sanctions for Class II Misconduct</u>

> The hearing officer to conduct Class II hearings shall impose one or more of the following sanctions upon a finding of guilt with the maximum reserved for only the most serious or persistent violators:
>
> A. Toplock (confinement to quarters), not to exceed five days for all violations arising from a single incident.
>
> B. Loss of privileges, not to exceed 30 days for all violations arising from a single incident.
>
> C. Assignment of extra duty, not to exceed 40 hours for all violations arising from a single incident.
>
> D. Restitution.

MICH. DEP'T OF CORR., Policy Directive 03.03.105, Attachment D.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff clearly has failed to allege conditions which would constitute an atypical and significant hardship. Therefore, Plaintiff's due process claims regarding his class II misconduct tickets are properly dismissed.

With regard to Plaintiff's retaliation claims in relation to these misconduct tickets, the court concludes that these claims lack merit. Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010). In this case, as in *Muhammad*, Plaintiff's allegations regarding retaliatory motive for the misconduct tickets are entirely conclusory. Therefore, Plaintiff's claims that his misconduct convictions violated his First Amendment rights are properly dismissed.

Plaintiff repeatedly asserts that he was subjected to racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976).

A claim that Plaintiff was treated one way and everyone else was treated another way, by itself, is not sufficient to state an equal protection claim. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993). Rather, Plaintiff must show that he was victimized by some suspect classification. *Id*. Absent some allegation or proof that the law was applied differently to plaintiff because of race, gender, age, or some other improper classification, no equal protection claim has been stated. *See Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir. 1985) (Conte, J., concurring); *see also Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 282 (6th Cir. 1991), *cert. denied*, 503 U.S. 945 (1992) (a person's conduct is legitimate for purpose of the equal protection clause even though it may have been mean-spirited, ill-considered, or other unjustifiable, objectionable, or unreasonable, so long as it was not motivated by class-based discrimination). As

noted above, Plaintiff fails to allege any specific facts showing that his treatmeant differed from similarly situated prisoners solely on the basis of race. Therefore, Plaintiff's equal protection claims are properly dismissed.

Plaintiff claims that Defendants Sweeney and Burk denied his access to the courts. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits

on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

As noted above, the alleged misconduct by Defendants Sweeney and Burk with regard to Case No. 2:12-cv-280 did not result in actual prejudice to Plaintiff's case. Therefore, Plaintiff's access to courts claims are properly dismissed.

Plaintiff's claims against a number of the Defendants named in this case appear to be based on their positions as supervisors and assert their failure to act or to respond to Plaintiff's grievances in the desired manner. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a

supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Mara, Warr, Ansel, Curley, Hill, Lawson, Jondreau, Chapel, Koskinen, Heyns, Rossland, Rolland, and Unknown Prison Health Services Supervisors were personally involved in the activity which forms the basis of his claim. Defendants Mara, Warr, Ansel, Curley, Hill, Lawson, Jondreau, Chapel, Koskinen, Heyns, Rossland, Rolland, and Unknown Prison Health Services Supervisors only roles in this action involve the denial of administrative grievances or the failure to act. Defendants Mara, Warr, Ansel, Curley, Hill, Lawson, Jondreau, Chapel, Koskinen, Heyns, Rossland, Rolland, and Unknown Prison Health

Services Supervisors cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Mara, Warr, Ansel, Curley, Hill, Lawson, Jondreau, Chapel, Koskinen, Heyns, Rossland, Rolland, and Unknown Prison Health Services Supervisors are properly dismissed for lack of personal involvement.

Finally, although Plaintiff names Prison Health Services as a Defendant in this case, he fails to allege any fact regarding this Defendant in the body of his complaint. Therefore, Defendant Prison Health Services is also properly dismissed for lack of personal involvement.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's First and Eighth Amendment claims that Defendants Meyers, Linder, Beruzethie, Sweeney, and Sackett deprived him of his meal trays between May 4, 2011, and May 8, 2011, in retaliation for his use of the grievance system, causing Plaintiff to suffer weight loss, weakness, and Plaintiff's First and Eighth Amendment claims against Defendant Dillian regarding excessive force and the use of chemical agents are non-frivolous and may not be dismissed on initial review. However, Plaintiff's complaints against the remaining Defendants lack merit and will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Meyers, Linder, Beruzethie, Sweeney, Sackett, and Dillian.

An Order consistent with this Opinion will be entered.

Dated:  6/25/2013           */s/ R. Allan Edgar*
                            R. Allan Edgar
                            United States District Judge